**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jose RODRIGUEZ,
Defendant-Appellant.**

No. 85–2802.

United States Court of Appeals,
Seventh Circuit.

Argued May 29, 1986.

Decided Oct. 9, 1986.

David C. Thomas, Chicago/Kent College of Law, Michael Deutsch, Peoples Law Office, Chicago, Ill., for defendant-appellant.

Deborah Devaney, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before BAUER, Chief Judge, POSNER, Circuit Judge, and SWYGERT, Senior Circuit Judge.

BAUER, Chief Judge.

Defendant Jose Rodriguez was convicted of conspiracy to oppose by force the authority of the United States government in violation of Title 18, U.S.C. § 2384. On appeal the defendant presents four principal arguments. First, he argues that the seditious conspiracy statute violates the treason clause of the Constitution. Second, he argues that he was selected for prosecution on impermissible grounds. Third, he argues that the district court erred in admitting video tape and false identification evidence. Fourth, he argues that the district court incorrectly instructed the jury on the elements of seditious conspiracy. We disagree with all four arguments and affirm the judgment of conviction.

## I.

Jose Rodriguez is a member of the FALN, an armed clandestine terrorist organization seeking independence for Puerto Rico. The FALN has claimed responsibility for the use of force, terror and violence, including the construction and planting of explosive devices at banks, stores, office buildings and government buildings in the Chicago area.

With court authorization, the government planted hidden cameras and microphones at two FALN safe-houses. A five month electronic surveillance followed. On April 17, 1983, Jose Rodriguez and FALN member Alberto Rodriguez met at the safe-house apartment located at 1135 West Lunt and discussed FALN activities including the following: (1) breaking out currently incarcerated FALN members from state and federal prisons; (2) the acquisition of sets of false identification; (3) the desirability of using code names; (4) methods of avoiding law enforcement surveillance; and (5) the sharing of funds by one FALN group with others around the country.

Within a month of this meeting, Jose Rodriguez applied for a Chicago public library card in the name of Benjamin Santiago, a twenty year old retarded deaf mute under his care at La Casita, a home for young mentally retarded patients. He used the library card and Santiago's birthdate and social security number to obtain an Illinois driver's license.

On June 29, 1983, government agents arrested Jose Rodriguez, Edwin Cortes, Alejanderina Torres, and Alberto Rodriguez for conspiracy to bomb a Marine Training Center located at 3040 West Foster Avenue, and the Army Reserve Training Center located at 6230 North Kedzie Avenue.

At trial, the evidence showed that Jose Rodriguez was a member of the conspiracy and that his intended role was to drive his co-conspirators to the bombing sites.

Jose Rodriguez was convicted of seditious conspiracy after a five week trial. He received a suspended sentence and was placed on five years probation. This appeal followed.

## II.

■ Jose Rodriguez argues that Section 2384 is unconstitutional on its face and as applied to this case, because it conflicts with the treason clause in Article III, Section 3 of the Constitution.[1] He argues that Section 2384 is merely a "constructive treason" statute that dispenses with the constitutional requirement of an overt act or the testimony of two witnesses in open court to the same overt act. We disagree and hold that Section 2384 does not conflict with the treason clause. Section 2384 protects a different governmental interest and proscribes a different crime.

Treason, a more limited offense than the offense of seditious conspiracy, *Cramer v. United States*, 325 U.S. 1, 8–22, 65 S.Ct. 918, 921–929, 89 L.Ed. 1441 (1944), is the most serious national crime and is punishable by death. It can only be committed by someone owing allegiance to the United States and it consists only of levying war against the United States for giving aid and comfort to its enemies. The reason for the restrictive definition is apparent from the historical backdrop of the treason clause. The framers of the Constitution were reluctant to facilitate such prosecutions because they were well aware of abuses, and they themselves were traitors in the eyes of England.

In contrast, Section 2384 has no requirement of the duty of loyalty, fidelity or allegiance to the United States. Unlike treason, seditious conspiracy does not extend beyond United States jurisdictional boundaries. It does not contemplate the

presence of an enemy foreign state or an actual war. Finally, Section 2384 requires at least two persons to commit the offense.

The purpose of Section 2384 also distinguishes it from the treason clause. Congress enacted Section 2384 to help the government cope with and fend off urban terrorism. It protects a different interest than that contemplated by the framers of the Constitution in the 18th century with regard to levying war. Section 2384 provides a vehicle for the government to make arrests before a conspiracy ripens into a violent situation. The government's interest in thwarting such plans and in safeguarding public security is unquestioned. Because Section 2384 proscribes a different crime and protects a different governmental interest, we find that Section 2384 does not conflict with the treason clause.

## III.

■ Jose Rodriguez argues that he was targeted for prosecution because he is Puerto Rican and active in the Puerto Rican independence movement. He claims that only Puerto Ricans have been charged with seditious conspiracy during the last sixty-five years and speculates that other activists who had been said to have opposed U.S. authority have gone free. Neither the facts established at trial nor the law support Rodriguez's claim. His selective prosecution claim fails because it does not satisfy the Supreme Court's two-prong test set forth in *Wayte v. United States*, 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985). Under *Wayte*, Rodriguez must show that he was singled out for prosecution while others similarly situated were not prosecuted. Next, he must demonstrate that the alleged discriminatory selection was based on impermissible grounds.

■ Rodriguez's observation that other activists who have opposed United States

---

1. Section 2384 provides:

   If two or more persons in any State or Territory, or in any place subject to the jurisdiction of the United States conspire to overthrow, put down, or to destroy by force the Government of the United States, or to levy war against them, or to oppose by force the authority thereof, or by force to prevent, hinder, or delay the execution of any law of the United States, or by force to seize, take, or possess any property of the United States contrary to the authority thereof, they shall each be fined not more than $20,000 or imprisoned not more than twenty years, or both.

authority have gone free does not satisfy the first prong of the *Wayte* test because Rodriguez fails to identify other terrorists within the reach of the United States government who have gone unpunished. He fails to satisfy the second prong because the evidence shows that the government did not select the defendant from a list of Puerto Rican activists. Rather, government agents learned of the planned bombings through court authorized surveillance. The record shows that the defendants were prosecuted because they were "engaged in conduct dealing with the making of bombs," (Tr. 25), not because of their activity in the Puerto Rican independence movement. Rodriguez was prosecuted because he, as an FALN member, took part in the conspiracy.

### IV.

Next, Rodriguez argues that the district court erred in admitting video tape evidence. The court admitted the government's video tapes which showed Rodriguez wearing gloves at the Lunt safehouse with FALN member Alberto Rodriguez. He argues that the tapes were unauthorized and should have been suppressed. Rodriguez also argues that the court erred in allowing the jury to see the false identification that he mentioned during the meeting and acquired a month later. There is no merit to either objection.

First, the video issue was resolved on interlocutory appeal and is no longer a part of this case. *United States v. Torres*, 751 F.2d 875 (7th Cir.1984), *cert. denied*, 470 U.S. 1087, 105 S.Ct. 1853, 85 L.Ed.2d 150 (1985). Next, Rodriguez argues that the false identification evidence broadened the basis for his conviction because the government did not develop the identification evidence until the middle of trial and that this constituted unfair surprise. To prevail on this claim, Rodriguez must show that (1) a complex set of facts distinctly different from the set of facts in the superseding indictment was presented to the jury or (2) the crime charged was so substantially altered at trial that it is impossible to know whether the grand jury would have indict-

ed for the crime actually proved. *United States v. Kuna*, 760 F.2d 813 (7th Cir. 1985); *United States v. Mosley*, 786 F.2d 1330 (7th Cir.1986).

[5] Rodriguez has not satisfied either criterion. The false library card and driver's license application introduced no new issues nor did they alter the nature of the seditious conspiracy charged in the indictment. This evidence was consistent with the language of the indictment. The fact that the government waited to introduce this evidence until late in the trial does not rise to the level of an unconstitutional variance. Rodriguez's claim that he was prejudiced by the introduction of the driver's license application and the library card is not supported by the evidence. He had ample time to examine the evidence against him. He can hardly claim unfair surprise because the government was able to discover his own deed. Furthermore, a grand jury willing to indict on the more general allegation that the defendant obtained forged identification would have even less trouble indicting the defendant after hearing the specifics; namely, that Rodriguez forged a retarded deaf mute's signature.

### V.

Finally, Rodriguez argues that the district court improperly took judicial notice of the authority of the United States over Puerto Rico. He contends that it was error to instruct the jury that the United States has authority over Puerto Rico and exclude his evidence on the unlawfulness of that authority. We disagree. The court properly took judicial notice of United States authority over Puerto Rico, and this authority is not subject to dispute. The court may take judicial notice of the United States Constitution and Statutes. *Downes v. Bidwell*, 182 U.S. 244, 21 S.Ct. 770, 45 L.Ed. 1088 (1901); *United States v. Schmitt*, 748 F.2d 249 (5th Cir.1984), *cert. denied*, 471 U.S. 1104, 105 S.Ct. 2333, 85 L.Ed.2d 850 (1985).

Rodriguez's argument that he was entitled to rebut the government's evidence has no merit. The court properly ruled that his evidence was irrelevant as a matter of law.

Rodriguez objects to the standard conspiracy instructions given by the district court and argues that the *strictissimi juris* standard governs his conduct. He argues that the prosecution is required to prove the elements of specific intent to use force and also prove active membership in the FALN. In urging the application of a special standard of proof, Rodriguez ignores the charges and evidence against him. The evidence shows that Rodriguez knowingly and intentionally became a member of the conspiracy. The defendants were charged with agreeing to use force, not "advocating" force which renders the Smith Act case relied upon by the defendant irrelevant. The jury was properly instructed and reasonably concluded that Rodriguez was a member of the FALN Lunt Avenue cell.

For the foregoing reasons the judgment of the district court is

AFFIRMED.