**UNITED STATES of America**

**v.**

**Omar Ahmad Ali Abdel RAHMAN, a/k/a "Omar Amed Ali," a/k/a "Omar Abdel Al–Rahman," a/k/a "Sheik Rahman," a/k/a "The Sheik," a/k/a "Sheik Omar," El Sayyid Nosair, a/k/a "Abu Abdallah," a/k/a "El Sayyid Abdul Azziz," a/k/a "Victor Noel Jafry," Ibrahim A. El–Gabrowny, Siddig Ibrahim Siddig Ali, Clement Rodney Hampton–El, a/k/a "Abdul Rashid Abdullah," a/k/a "Doctor Rashid," Mohammed Abouhalima, Abdo Mohammed Haggag, Amir Abdelgani, a/k/a "Abdou Zaid," Fares Khallafalla, a/k/a "Abdou Fares," Tarig Elhassan, Fadil Abdelgani, Mohammed Saleh, a/k/a "Mohammed Ali," Victor Alvarez, a/k/a "Mohammed," Matarawy Mohammed Said Saleh, a/k/a "Wahid," Earl Gant, a/k/a "Abd Rashid," a/k/a "Abd Jalil," a/k/a "Abdur Rasheed," Defendants.**

No. S3 93 Cr. 181 (MBM).

United States District Court,
S.D. New York.

June 7, 1994.

Robert S. Khuzami, Andrew C. McCarthy, Alexandra Rebay, Asst. U.S. Attys., New York City, for U.S.

Emmanuel A. Moore, Hollis, NY (Legal Advisor to defendant Abdel Rahman, pro se).

William M. Kunstler, Ronald L. Kuby, New York City, for defendants El–Gabrowny & Siddig Ali.

Kenneth D. Wasserman, New York City, for defendant Hampton–El.

Steven M. Bernstein, New York City, for defendant Amir Abdelgani.

Valerie S. Amsterdam, New York City, for defendant Khallafalla.

Joyce C. London, Kellman & London, New York City, for defendant Elhassan.

Wesley M. Serra, Brown Berne & Serra, New York City, for defendant Alvarez.

John H. Jacobs, New York City, for defendant Saleh.

Charles Lavine, Grossman Lavine & Rinaldo, Forest Hills, NY, for defendant Fadil Abdelgani.

Andrew Patel, New York City, for defendant Gant.

David L. Lewis, Lewis & Fiore, New York City, for defendant Abouhalima.

Thomas H. Nooter, Freeman Nooter & Ginsberg, New York City, for defendant Said Saleh.

Lawrence Schoenbach, New York City, for defendant Haggag.

Roger Stavis, New York City, for defendant Nosair.

## OPINION AND ORDER

MUKASEY, District Judge.

Defendant El Sayyid Nosair has moved to strike from Count One of the indictment references to the murder of Meir Kahane, and to sever Counts Five, Six, Seven, Eight and Ten.[1] Further, defendant Mohammed Abouhalima has moved to strike from Count One references to a plan to assassinate Egyptian president Hosni Mubarak, and to bar all reference at trial to either of these incidents as unduly prejudicial under Fed. R.Evid. 403. In addition, Nosair, Omar Ahmad Ali Abdel Rahman, Mohammed Abouhalima, Fares Khallafalla, Mohammed Saleh and Matarawy Mohammed Said Saleh have moved to sever all counts against them and for separate trials. All defendants have been permitted to join in one another's motions to the extent those motions relate to them, with the exception of Ibrahim El–Gabrowny, who disclaimed any motions other than those he made, a waiver apparently in aid of his unsuccessful motion for a severance and an early trial.

The government has responded with an unusually detailed and lengthy brief meant to serve as a partial evidentiary proffer in opposition to the motions.

---

1. Nosair has moved also to dismiss those counts as barred by the double jeopardy clause of the Fifth Amendment. That motion is treated in a separate opinion being filed contemporaneously with this one, 854 F.Supp. 251.

For the reasons set forth below, the motion to strike the references in Count One to the Kahane murder is granted. The other motions are denied.

## I.

Count One of the indictment charges a seditious conspiracy to levy a war of urban terrorism against the United States through a series of violent acts principally in New York, both accomplished and proposed. These violent acts, set forth in that section of Count One listing the means allegedly used by the defendants to further the objects of the conspiracy (Indictment ¶¶ 10–15), include the bombing of the World Trade Center in February 1993, the planned bombing of buildings and vehicular tunnels in June 1993, and the assassination of various public figures. They include also the commission of unspecified "acts of terrorism designed to undermine the foreign relations of the United States." (Indictment ¶ 15)

The overt acts allegedly taken in furtherance of this scheme include both the murder in November 1990 at a New York hotel of Meir Kahane (Indictment ¶ 16f)—a rabbi and leader of a small radical group opposed, among other things, to any Arab presence within the biblically defined borders of Israel [2]—and the proposed assassination of Egyptian president Hosni Mubarak during his 1993 visit to the United Nations (Indictment ¶ 16t, u).

## II.

■ Defendants argue as to the assassination of Kahane and the planned assassination of Mubarak that, whatever those acts might accomplish or assist, they are simply unrelated to any goal reasonably defined as sedition, and therefore they cannot be included within a count that charges conspiracy to commit sedition. Defendants note that Kahane was not a federal official (indeed, he was an Israeli citizen), that the shooting of the postal officer after the Kahane slaying was entirely unrelated to that officer's governmental function, and that Mubarak is an Egyptian; they argue that killing foreign citizens and inci-

dentally related acts cannot be sedition against the United States. (Nosair Mem. 13, Abouhalima Mem. 65–66, 69–71)

The government's response is that the conspirators themselves saw both acts as furthering a seditious goal: Thus, for example, they regarded Kahane as a proponent of Jewish emigration to Israel and the United States as a supporter of Zionists and pro-Israeli groups (Gov't Mem. 69), and Kahane presumably as one who fit in one or both categories. Therefore, a blow against Kahane, the government argues, was a blow that was "part of a greater struggle" (Gov't Mem. 70) against the "'infidel' West, of which the United States was deemed the leader" (Gov't Mem. 69), a struggle that included the bombing of the World Trade Center. (Gov't.Mem. 70) Further, the conspirators allegedly regarded Mubarak as a puppet of the United States, and thus a blow against him presumably was a blow against the United States. (Gov't.Mem. 70–71) The crux of the government's argument, however, is not the actual connection between either Kahane or Mubarak and official acts and policies of the United States. The government argues that because both acts were on the agenda of the conspirators and were perceived by them as furthering a goal that included sedition, they should be provable as acts in furtherance of a conspiracy to accomplish sedition:

> Aside from the fact that there need have been no furthering [of the goal of sedition] at all for [statutory] liability to be established, ... the material issue in this case is not what the government (or, for that matter, defense counsel or the Court) believes, however objectively, might advance a war against the United States. The question for the jury is what the defendants *intended*—and the appropriate inquiry is whether the evidence the government seeks to introduce, considered in the context of all the proof to be offered, would form an adequate basis for a rational juror to conclude that the defendants intended to levy war on the United States or oppose its authority by force.

(Gov't.Mem. 72) (emphasis in original).

An evaluation of the parties' arguments requires a comparison of the charges in the

---

**2.** See, *e.g.,* Gershom Gorenberg, "Burning Gush", *The New Republic,* Apr. 18, 1994, at 21.

indictment with the statute that defines and proscribes seditious conspiracy, 18 U.S.C. § 2384:

> If two or more persons in any State ... conspire to overthrow, put down, or to destroy by force the Government of the United States, or to levy war against them, or to oppose by force the authority thereof, or by force to prevent, hinder or delay the execution of any law of the United States ... they shall each be fined not more than $20,000 or imprisoned not more than 20 years, or both.

The theory of the indictment is that the defendants conspired "to levy a war of urban terrorism against the United States, to oppose by force the authority of the United States, and by force to prevent, hinder and delay the execution of laws of the United States." (Indictment ¶ 9) The indictment charges that the defendants planned to commit five separate kinds of acts in furtherance of the conspiracy's objectives (Indictment ¶¶ 10–15): bombings of government and landmark buildings and of vehicular tunnels and bridges; kidnapping of particular government, law enforcement and judicial officers; obstruction of justice designed to secure the release of imprisoned members of the organization; concealment of their unlawful activities; and opposition to the federal government through unspecified "acts of terrorism designed to undermine the foreign relations of the United States." (Indictment ¶ 15)

■ To be sure, the kind of "war" punishable under § 2384 does not require the presence of a foreign power, or an actual war in the sense of forcible conquest of territory and supplanting of the government. "Congress enacted Section 2384 to help the government cope with and fend off urban terrorism." *United States v. Rodriguez*, 803 F.2d 318, 320 (7th Cir.1986). The interests to be protected by enforcing the statute include the government's interest "in safeguarding public security." *Id.* That is perhaps the most basic function of government, and is what those who established our government had in mind when they drafted a Constitution whose purpose, among others, was "to insure domestic Tranquility." U.S. Const. pmbl.

■ However, although this statute protects basic societal interests and must be read to cover a wide spectrum of activities, for the reasons summarized below I cannot agree with the government when it argues, as it seems to in the above quoted portion of its memorandum (see p. 258, *supra*), that the law has no objective limits whatever. Oddly, the government seems to have arrived at this mistaken view through a series of correct arguments strung together to reach an incorrect result. Thus, the government is correct when it insists that the statute requires "no furthering at all" of the goal of sedition for liability to attach because the crime is the agreement to promote the ends the law forbids. (Gov't.Mem. 72) Indeed, the statute contains no requirement of an overt act. The government is correct also when it points out that "[t]he question for the jury is what the defendants *intended,*" (*id.*) in the sense that because the gist of the crime is agreement, the defendants' intent determines whether or not they committed it.

■ The government is correct as well when it states that "the appropriate inquiry is whether the evidence the government seeks to introduce, considered in the context of all the proof to be offered, would form an adequate basis for a rational juror to conclude that the defendants intended to levy war on the United States or oppose its authority by force." (*Id.*) But it is here that the government's argument goes astray, conflating the issue of what conduct furthers a seditious end within the meaning of the statute with the entirely separate issue of what evidence may be admissible to help prove an agreement to achieve that end. Not all conduct admissible to prove the existence of a charged conspiracy is necessarily conduct in furtherance of that conspiracy. If it were, there would be no such thing as other crimes evidence in a conspiracy case. *See* Fed.R.Evid. 404(b).

■ The Kahane murder, if it were proved to have been the act of more than one of these defendants, would be admissible for a variety of reasons at a joint trial, even if had not been charged in a separate substantive count or mentioned in the conspiracy count.

Those reasons include to show that defendants associated with one another, to demonstrate a common scheme of which the conspiracy charged in Count One was a part, to prove that defendants intended to do more than talk about acts of violence, to explain why other defendants were intent on freeing Nosair after he was convicted on weapons charges relating to the murder, and perhaps for other reasons as well. In that sense, proof of the murder would help prove the seditious conspiracy—but in that sense only. The murder of Kahane could not be in itself an overt act tending to accomplish the goals of a seditious conspiracy unless, objectively, that murder could further an end that the statute prohibits agreeing to further, wholly apart from what the defendants thought or believed. Were the rule otherwise, the seditious conspiracy statute would expand infinitely to embrace the entire agenda of anyone who violated it, whether or not that agenda also included an objectively non-seditious plan.

The flaw in the government's argument may be illustrated by an example having nothing to do with this case. Consider a defendant charged with conspiracy to distribute narcotics. If that defendant distributes a package that contains only flour, in the belief that the substance in fact is heroin, he can be convicted of conspiracy because he intends to distribute heroin and has agreed to do so, *United States v. Murray*, 527 F.2d 401, 411–12 (5th Cir.1976); *United States v. Senatore*, 509 F.Supp. 1108, 1110–11 (E.D.Pa.1981), and cases cited therein, although he cannot be convicted of the substantive offense. *See Murray, supra* (stressing distinction between conspiracy and substantive charge). In such a case, a conspiracy count properly could allege the overt act of distributing flour, because the defendant thought the flour was heroin. But if it is alleged that he knew the package contained flour, and that he agreed to distribute it in the belief that flour is a narcotic drug, then such an act could not be alleged as one in furtherance of the conspiracy.

Moreover, he could not be convicted of conspiring to distribute narcotics if the distribution of flour is the only proof of his agreement to distribute narcotics. *Cf. Grunewald v. United States*, 353 U.S. 391, 396–97, 401–02, 77 S.Ct. 963, 969–70, 972, 1 L.Ed.2d 931 (1957), requiring that an overt act in furtherance of the conspiracy occur within the limitations period, and that such an act not be merely an ancillary act of concealment performed after the objects of the conspiracy have been achieved, a holding that necessarily requires a court to examine the objective nature of an overt act. Even if there is other proof of the hypothetical defendant's agreement to distribute narcotics, the knowing distribution of flour cannot be transformed into an overt act in furtherance of that agreement simply because the defendant has been shown by other proof to have agreed also to distribute narcotics.

The subject of proof is significant because the indictment has charged that the Kahane murder was an overt act in furtherance of the seditious conspiracy, and a jury presumably would be asked to consider it as such, and not merely as evidence tending to establish the conspiracy in the more remote ways suggested above. *See* p. 259, *supra.* However, the government's extensive memorandum does not suggest any way in which the Kahane murder could have furthered the goals of a seditious conspiracy beyond the statement that the defendants thought it did. That is not enough.

 Nor does the equation change simply because the statute in question does not require the commission of an overt act. The government chose to put before the grand jury an indictment that included an allegation that certain overt acts were taken in furtherance of the conspiracy. Presumably, the government intends the jury to consider such acts, if proved, as evidence that the defendants agreed not simply to engage in miscellaneous criminal conduct, but agreed specifically to oppose the United States government in the ways the statute forbids. Once the acts have been alleged in the indictment, the government is not relieved from the rigors of logic simply because the statute did not require that the acts be included in the first place.

 The alleged plan to assassinate Mubarak presents a different issue, even though

the government has argued for its inclusion as an overt act on the same basis as it argues for inclusion of the Kahane murder: that the defendants thought of Mubarak in essence as a representative of the United States, and therefore thought of his murder as a blow against the United States. The indictment charges that one of the means employed by the conspirators to further the objects of the conspiracy was to "oppose by force the government of the United States by planning and committing acts of terrorism designed to undermine the foreign relations of the United States." It is at least objectively plausible that the plot to murder a foreign head of state while he was on United States soil would have a direct impact on this country's ability to conduct its foreign relations, and thus would constitute an agreement "to oppose by force the authority" of the United States to conduct its foreign relations. Therefore, the alleged plan to assassinate Mubarak, accompanied by proof of animus against the United States, may be proved as a step in furtherance of the seditious conspiracy charged in the indictment. Proof of such animus is crucial, however, because without it the defendants would be shown merely to have engaged in conduct that conflicted incidentally with some policy of the United States. If that were enough to constitute sedition, then our hypothetical defendant charged with narcotics conspiracy (see pp. 259–260, supra), if he were armed, could be charged with sedition as well, because in agreeing to traffic in narcotics with the aid of force he would be agreeing, albeit incidentally, to oppose by force a policy of the United States.

Accordingly, the motion to strike from Count One reference to the Kahane murder is granted, but the motion to strike the reference to the Mubarak assassination plan is denied.

### III.

█ Nosair's motion pursuant to Fed. R.Crim.P. 14[3] to sever the counts charging

the murder of Kahane (Count Five), the contemporaneous attempted murder of a postal officer (Count Six) and corresponding weapons charges (Counts Eight, Nine and Ten) is based on the claim that those charges are unrelated to the principal charge in the indictment, the seditious conspiracy charged in Count One.

Nosair's severance motion will be measured against the more restrictive joinder standard of Fed.R.Crim.P. 8(b), permitting joinder of defendants only when they are charged with participating "in the same act or transaction or in the same series of acts or transactions," notwithstanding that when the counts proposed to be severed relate to the movant alone the standard might be the more permissive joinder standard of Fed. R.Crim.P. 8(a), which requires only that the charged offenses be "of the same or similar character" or "parts of a common scheme or plan." The government's memorandum proffers evidence that the conspiracy charged in Count One antedated the Kahane murder, including allegations that Nosair and others participated in paramilitary training (Gov't. Mem. 9–10), that such activities were reported to Rahman (Gov't. Mem. 10–11), that Mahmud Abouhalima—a defendant convicted of participating in the World Trade Center bombing, *United States v. Salameh, et al.,* 93 Cr. 180 (KTD), and brother of Mohammed Abouhalima, a defendant in this case—was supposed to drive Nosair away from the scene of the Kahane slaying (Gov't. Mem. 12) and that the fingerprints of two other defendants convicted in the World Trade Center case were found on Nosair's car after the slaying (*id.*). This proof suggests at least that the Kahane murder was carried out as part of a common plan that included the alleged conspiracy. (Gov't. Mem. 10–14)

█ Accepting that proffer, as I must for current purposes, it is apparent that evidence of the Kahane murder and the related charges would be admissible even at a trial that included only Count One, as evidence of the over-arching plan, to show association, to

---

**3.** Rule 14 provides in relevant part: "If it appears that a defendant ... is prejudiced by a joinder of offenses or of defendants in an indictment ... or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

demonstrate motive for other acts, and the like. *See* p. 259, *supra.* Once such proof is shown to be admissible, there is no potential prejudice to be avoided by severing the charges to which that proof relates.

Nosair's assertion that proof of the Kahane murder and associated charges would constitute a separate trial within a trial is unconvincing. As noted above, such proof is admissible to help prove the conspiracy charged in Count One. To exclude this proof entirely would be unfair to the government. To sever the counts charging the substantive crimes but permit some lesser amount of proof on both sides would be unmanageable. Just as the government would wish to present proof Nosair committed the substantive offenses, he would wish to present contrary proof, and would be allowed to do so. Thus, a severance of the underlying charges would accomplish little of advantage to Nosair. However, to say that these substantive charges will remain joined to the other charges does not mean that unlimited proof will be permitted from either side. The court retains discretion to limit proof, Fed. R.Evid. 403, and will exercise it as appropriate.

For the above reasons, Nosair's motion to sever counts is denied.

## IV.

■ None of the defendants who have moved pursuant to Fed.R.Crim.P. 14 to sever all charges against each of them has moved to sever some group of defendants. Each appears to be seeking his own trial. Even if that were not the case, all defendants are charged with participating in the seditious conspiracy described in Count One. For the reasons set forth below, neither the numerosity of the remaining defendants scheduled for trial, who now total 13, nor relevant considerations of potential prejudice from joinder, warrant a severance for any moving defendant. It is convenient to treat these severance motions together with Abouhalima's motion, pursuant to Fed.R.Evid. 403,[4] to bar all

reference to the Kahane and Mubarak incidents as unduly prejudicial.

■ Considered dictum in *United States v. Casamento*, 887 F.2d 1141, 1151–52 (2d Cir.1989), *cert. denied*, 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990), appears to have created what amounts to a rebuttable presumption against trying more than 10 defendants together in a trial likely to last longer than four months. Nonetheless, the court's inquiry in the end remains what it has always been—namely, " 'whether, on balance, the fair administration of justice will be better served by one aggregate trial of all indicted defendants or by two or more trials of groups of defendants.' " *Id.* at 1151, quoted in *United States v. DiNome*, 954 F.2d 839, 842 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 94, 121 L.Ed.2d 56 (1992). Weighing heavily in that balance is the familiar principle that defendants who have been indicted together should be tried together, *United States v. Ventura*, 724 F.2d 305, 312 (2d Cir.1983), a principle informed by considerations of both efficiency and fairness, including promotion of accuracy in the assessment of relative culpability, and avoidance of (i) repetitive proceedings with attendant inconvenience and trauma, (ii) random favoritism to later tried defendants, and (iii) inconsistent verdicts. *Richardson v. Marsh*, 481 U.S. 200, 210, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 (1987).

By those standards, the government's detailed proffer in its memorandum, which does not purport to be exhaustive (Gov't. Mem. 2), is more than sufficient to rebut whatever presumption may be created by *Casamento* against joint trials of defendants based on sheer numerosity and projected length of the trial. All defendants, 13 rather than the 22 who stood trial in *Casamento*, are charged with participating at least in the conspiracy described in Count One, which appears to be less intricate than the interlocking and geographically dispersed relationships that constituted the narcotics distribution and money laundering network proved in *Casamento*.

---

4. Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading

the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

887 F.2d at 1148. The seditious conspiracy charged here is easily comprehended and involves discrete incidents that are easily separable in a juror's mind. Unlike repeated narcotics transactions, which may be easily confused without the aid of charts or other devices, the actual and projected incidents charged here are not difficult to keep straight. A juror is unlikely to confuse the murder of Kahane (Gov't. Mem. 11–12) with the planned assassination of Mubarak (Gov't. Mem. 28–30, 44–46), or either of those with the planned bombing of vehicular tunnels (Gov't. Mem. 37–40) or the actual bombing of the World Trade Center. (Gov't. Mem. 21–24)

■ Nor has any defendant convincingly alleged prejudice of the sort that necessitates severance. The type of prejudice alleged by a defendant to justify severance is important because the Supreme Court has held that when defendants have been joined properly under Rule 8(b), as I have found these defendants are, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States,* —— U.S. ——, ——, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993). No such risk has been described here.

The closest any defendant has come is the allegation in the briefs of Abouhalima and Matarawy Mohammed Said Saleh ("Matarawy Saleh") that the joinder of each raises the risk ("near-certainty" in Abouhalima's estimation (Abouhalima Mem. 77)) of inconsistent defenses. At best, however, these allegations are not specific and do not show convincingly that whatever improper prejudice might result from such defenses cannot be mitigated or avoided by jury instructions or redaction of evidence.

■ Abouhalima argues that he, unlike others, spoke to the FBI and warned them about codefendant Siddig Ibrahim Siddig Ali, and that he ultimately withdrew from the conspiracy. (*Id.* 77–78) Although he does not say so explicitly, his argument suggests that any attempt to introduce the statement about Siddig Ali would raise problems under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and that to exclude such evidence would hamstring Abouhalima's defense. But the *Bruton* problems, if they develop, can be avoided by redacting Siddig Ali's name from the statement in question and instructing the jury. So far as Abouhalima's withdrawal from the conspiracy, to the extent evidence of such withdrawal puts him in conflict with his codefendants and makes him their antagonist at trial, that seems more prejudicial to Abouhalima's codefendants than to him, and in any event is not the kind of prejudice Rule 14 was designed to remedy:

> Mutually antagonistic defenses are not prejudicial *per se.* Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion.

*Zafiro,* —— U.S. at ——, 113 S.Ct. at 938.

■ Matarawy Saleh alleges only that his defense necessarily will inculpate other defendants because he will show that he "was lured into the safehouse through the deception of [government informant] Emad Salem and [codefendant] Siddig Ali. Once in the safehouse, he was held at gunpoint by another man" (Matarawy Saleh Mem. 39), presumably another codefendant. But this defense, again more prejudicial to his codefendants than to the moving defendant, includes no proffer of evidence that would be inadmissible at a joint trial and no prospect of impermissible prejudice.

■ These defendants, and Khallafalla and Mohammed Saleh, also claim that they are alleged to have played a lesser role than the others, are otherwise distinguishable from the others, and that they did not participate directly in some of the criminal incidents attributable to others. However, the Court of Appeals has iterated and reiterated the observation that "differing levels of culpability and proof are inevitable in any multidefendant trial and, standing alone, are insufficient grounds for separate trials." *United States v. Carson,* 702 F.2d 351, 366–67 (2d Cir.), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983) (quoted in *Unit-*

ed States v. Scarpa, 913 F.2d 993, 1015 (2d Cir.1990) and *United States v. Chang An–Lo,* 851 F.2d 547, 557 (2d Cir.), *cert. denied,* 488 U.S. 966, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988)). Proof of the full nature and scope of a conspiracy is admissible even at the trial of lesser participants. *Scarpa, supra,* 913 F.2d at 1015; *United States v. Nersesian,* 824 F.2d 1294, 1304 (2d Cir.), *cert. denied,* 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987). A defendant cannot claim improperly prejudicial spillover from the introduction of such proof. *United States v. Rosa,* 11 F.3d 315, 341 (2d Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994). Moreover, it bears mention that even the least of these defendants is charged with knowingly agreeing to and, according to the government's memorandum (Gov't. Mem. 37–40, 51–57), with actually assisting conduct which, if it had been fully carried out, would have resulted in mass murder. Such a charge makes it particularly difficult to credit claims of prejudicial spillover from evidence of, for example, an incident such as the Kahane slaying or the plan to assassinate Mubarak, or even the bombing of the World Trade Center.

■ Nothing in *DiNome* is to the contrary. In that case, the Court held that a mistrial should have been granted as to two defendants who were convicted of mail and wire fraud but were acquitted on motion at the close of the government's case of the underlying RICO charges. 954 F.2d at 844–45. However, the basis for that holding was that none of the evidence relating to the alleged RICO enterprise, which included "vicious murders, loansharking, auto theft, pornography, and firearms trafficking and the very nature of [the RICO enterprise]," was admissible as to them. *Id.* at 844. Here, each of the moving defendants except for Nosair is charged principally if not exclusively with participating in the seditious conspiracy charged in Count One. As to Nosair, the charges surrounding the Kahane slaying are admittedly of lesser magnitude than the seditious conspiracy charge in Count One. However, they simply do not look so disproportionately innocuous alongside the seditious conspiracy charge as the mail and wire fraud counts looked alongside the murder and oth-

er predicates underlying the RICO charge in *DiNome,* in which the defendants there were not alleged to have had any role.

Rahman's motion rests on nothing firmer than the claim that there are counts in which he is not named, that evidence against others would not be admissible as to him, and that improper prejudice would result if he is tried together with others. He, however, is alleged to have been the leader of all the other defendants and a source of authority for committing the acts and forming the plans charged in the indictment. Among all the defendants, he is the one least able to argue for severance.

Because the charges are properly joined and the defendants are properly joined, the severance motions are denied.

■ Abouhalima's motion to bar reference to the Kahane and Mubarak incidents as unduly prejudicial does not merit extended discussion. Again, all defendants are charged with participating in the seditious conspiracy charged in Count One. For the same reasons the Kahane and Mubarak incidents cannot justify severance, they are not so prejudicial as to warrant exclusion under Rule 403. Next to the bombing of buildings, tunnels and bridges, one actual murder and another proposed murder are not inflammatory. Accordingly, Abouhalima's motion to exclude reference to those incidents is denied as well.

SO ORDERED: